*758 OPINION OF THE COURT
Nicholas Colabella, J.
Defendant has been indicted for the crimes of murder in the second degree (two counts) and criminal possession of a weapon in the fourth degree (two counts). On November 7, 1986, defendant filed a notice of intent to proffer psychiatric evidence (CPL 250.10 [2].) Thereafter, defendant was examined by a psychiatrist designated by the District Attorney, and a written report of the psychiatrist’s findings and evaluation was made available to defense counsel. (CPL 250.10 [3], [4].)
In his report, under the caption "Materials Reviewed”, the psychiatrist listed 33 different documents which he had reviewed, in addition to interviewing defendant, in formulating his opinion. These materials included police reports and statements of civilians, apparently unredacted, as well as various medical and academic records. Defendant alleges that he has not been provided with 23 of the documents and now moves that this court order the People to disclose same so that defendant’s expert can review them. The People oppose on the grounds: That there is no statutory requirement for such discovery; that the statutory scheme with respect to a defendant’s offer of psychiatric evidence precludes such discovery, by implication; and that defendant is using the possibility that he will interpose the affirmative defense of mental disease or defect to obtain premature discovery of what is, in effect, so-called Rosario materials.
The absence of a statutory provision requiring disclosure in this specific instance does not preclude such disclosure per se. Indeed, a compelling argument can be made that the People have indicated their intent to introduce the content of these documents at trial, albeit indirectly, through the testimony of their psychiatrist. Thus, if the court were to find that defendant has shown that such property is material to the preparation of his defense, discovery would be specifically authorized in any event. (CPL 240.40 [1] [c].)
Rather than engage in such intellectual gymnastics, however, it should suffice to recall that one of the purposes of discovery is to provide the defendant with the opportunity for the adequate preparation of his defense; and that the highest priority of any court is to assure that the defendant is fairly tried. Where disclosure is necessary if these standards are to be satisfied, the lack of a specific statutory requisite therefor is a minor obstacle indeed.
*759 The People next contend that the statutory prerequisite of notice where a defendant intends to proffer psychiatric evidence assumes that defendant has acquired such evidence, i.e., that defendant has been examined by a psychiatrist of his choice, before giving notice. Therefore, since the People are not entitled to seek examination of defendant by their own psychiatrist until after such notice, the disclosure of otherwise nondiscoverable materials was not provided for because it is unnecessary. In effect, that defendant would not have filed notice if he did not have sufficient psychiatric evidence for his purposes to begin with. Thus, the People argue, any materials reviewed by their witness are so-called Rosario materials and must be disclosed no sooner than mandated by the timetable set out in CPL 240.45.
Considered in a vacuum it would seem illogical for a defendant to serve notice of intent to proffer evidence unless and until he believes he has such evidence to proffer. However, the service of notice does not, of course, bind a defendant to present any evidence or any defense. Nor does the statute contain any language which would indicate that a defendant must have some basis for serving notice beyond the possibility that he may wish to proffer such evidence in the future. The court is not, therefore, convinced that there is any inherent assumption in the statutory scheme.
Yet even if there were such an assumption, and even if this defendant has in fact acquired psychiatric evidence before serving notice, it does not follow that the requested disclosure is precluded by implication. The People’s psychiatrist is of the opinion that defendant did not suffer from a mental disease or defect, i.e., that he does not have a psychiatric defense. Perhaps the materials which he had access to, and which defendant’s psychiatrist has not, provided some insight which accounts for the apparent difference of opinion between the two. At the very least, disclosure in these circumstances could well limit and focus the issues for trial; another of the purposes of discovery.
Further, the characterization of the requested items as Rosario materials is both inaccurate and irrelevant. None of the documents represent prior statements of, or memoranda prepared by, the witness who will testify. (Compare, People v Consolazio, 40 NY2d 446 [1976]; People v Rosario, 9 NY2d 286 [1961].) Also, they do not fall into the category of materials which a witness has reviewed, in order to refresh his recollection, immediately prior to testifying.
*760 Rather, the materials comprise part of the basis for the opinion the witness will testify to as an expert. Thus, in these circumstances, they are more akin to a piece of physical evidence which has been subjected to scientific testing, e.g., a firearm, than the incident report prepared by the patrolman who seized the piece of evidence. While these same reports and statements would constitute Rosario materials if the persons who prepared them were to testify, the label has no significance in the context of the psychiatrist’s testimony.
Finally, disclosure is dictated by the simple and fundamental demands of fairness and due process of law. (Cf., Wardius v Oregon, 412 US 470 [1973].) The courts of this State have considered the devastating effect which the prosecution can accomplish on cross-examination given this type of advantage, and have condemned the practice. (People v Gonzalez, 120 AD2d 464 [1st Dept 1986]; People v Wise, 74 AD2d 929 [2d Dept 1980].) The effect would be no less devastating if the advantage were used not to attack the defendant’s witness on cross-examination but to bolster the People’s witness on direct examination. In the battle of experts the People’s witness would be better informed and, to the jury, his opinion might therefor be more credible. Indeed, as the People note, the defense to which such testimony relates would now be an affirmative one. So the People’s expert would testify after the defendant’s, thereby magnifying the effect.
Accordingly, the defendant’s motion is granted. The People will provide defendant with copies of all materials reviewed by their psychiatrist which have not previously been disclosed, as enumerated by defendant.
The People have made a cross motion, upon leave granted by this court in its order of February 10, 1987, for a protective order denying and limiting discovery of names and addresses of witnesses. The People’s affirmation has been supplemented, with respect to one witness only, by oral application, in camera.
The People allege as the bases for their motion:
"First, as indicated in the annexed redacted police report, a member of the defendant’s family, specifically his mother, has told the police that the defendant is the 'type of person who will get what she termed revenge against someone who hurts him.’
"Second, several witnesses have expressed apprehension and fear as to the possibility of the defendant learning their names and/or addresses.
*761 "Finally, although the defendant is presently incarcerated, he has told the police that he had at least one friend who had been in trouble with the law (see Officer Fatigate’s report dated August 4, 1986, annexed to defendant’s omnibus motion). There is a realistic fear that the defendant could contact or intimidate the witnesses via his friends or family members.”
Despite the opinion of defendant’s mother as to the character of her son, defendant is incarcerated and will remain so throughout the trial barring any dramatic, monumental and entirely unexpected circumstances which would justify his release. Thus, there is no real possibility that defendant will personally be in a position to pose any danger to a prospective witness.
Furthermore, defendant is an indigent person (which is why he is being represented by the Legal Aid Society of Westchester County) and, so far as this court is aware, is not suspected of any ties to organized crime. There is nothing which indicates that defendant has the wherewithal or the kinds of associates, assuming he had the inclination, to intimidate or otherwise pose a danger to a prospective witness from his jail cell. Even if defendant has a friend "who had been in trouble with the law”, it takes an enormous leap in logic to infer therefrom that this unidentified friend is him (or her) self-inclined, capable of, and likely to pose some unspecified danger in defendant’s behalf.
While the witness’ feelings are certainly understandable, the allegation that a witness is generally apprehensive about disclosure of his name and address, or would simply prefer that such information not be disclosed, does not constitute a showing of "a substantial risk of physical harm, [or] intimidation”, which would establish good cause for the issuance of a protective order. (CPL 240.50 [1].)
Accordingly, the People’s motion is granted as to the single prospective witness whose identity, as well as the justifications for a protective order, were presented to, and considered by, the court in camera. The motion is otherwise denied, and the People shall make such compliance as was required in point C (6) of this court’s original decision and order.
Any material provided pursuant to this order or derivative therefrom shall be maintained in the exclusive possession of defense counsel, and shall be used exclusively for the purpose of preparing a defense. (CPL 240.50 [2].) This court will not, of *762 course, attempt to impose any restriction upon communication between defendant and his attorney. We do, however, rely upon the good judgment of defense counsel as an officer of the court.
Since this matter has been set down for trial on March 2, 1987, counsel were notified of what the court’s decision would be before it was actually filed so that compliance could be accomplished before that date. Therefore, it should be unnecessary for the court to provide a deadline for compliance.